ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.   5:08CR84 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | <u>Judge John R. Adams</u> |
| RASHIDD E. DOUGLAS, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I.  Introduction**

This matter is before the Court for the sentencing of the Defendant Rashidd Douglas.  On February 13, 2008, the defendant was named in a one-count indictment charging him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The matter proceeded to trial before a jury on April 29th and 30th, 2008.  On April 30th, 2008, the jury returned a verdict of guilty. The Court ordered and received a pre-sentence investigation and Report related to the charges herein.

**II.  Advisory Guideline Calculations**

The Court adopts the Advisory Guideline Calculation as recommended by the Probation Officer at pages 5 through 7 of the Presentence Investigation Report which are as follows:

> A.  Base Offense Level: The United States Sentencing Commission Guideline for a violation of 18 U.S.C. 922(g)(1) is found in U.S.S.G. 2K2.1 (a)(2) and calls for a Base Offense Level of 24.
>
> B.  Specific Offense Characteristic: Pursuant to U.S.S.G. 2K2.1(b)(4), if the firearm had an obliterated serial number, add 4 levels.

    C. Specific Offense Characteristic: Pursuant to U.S.S.G. 2K2.1 (b)(6), if the defendant used or possessed any firearm or ammunition in connection with another felony offense, add 4 levels.

Accordingly the Defendant's Adjusted and Total Offense Level is 32.

Additionally, the Probation Officer properly calculated the Defendant's Criminal History Category, placing him in Category III. See ¶¶ 32-34 at page 7 of the Presentence Investigation report.

Accordingly, pursuant to U.S.S.G. Chapter 5, Part A, based on a Total Offense Level of 32 and a Criminal History Category III, the advisory guideline range of imprisonment is 151 to 188 months, supervised release of 2-3 years, a possible fine of $17,500 to $175,000, and a Special Assessment of $100.00. However, the statutory maximum term of imprisonment is 120 months.

## III. Departure and Variance

### A. Departure

There are no grounds for a departure in this matter, and the Court therefore declines to depart.

### B. Variance

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence. Based upon those factors, the Court finds a basis for a variance as outlined below.

In reaching its conclusion, the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. The Court must also review the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal

conduct and to protect the public from further crimes of the Defendant; and c) to provide the Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

**1. Nature and Circumstances of the Offense**

On January 25th, 2007 a residence at 724 Kenmore Boulevard, in Akron, Ohio was set up for surveillance as part of an ongoing investigation by the Akron Police Street Narcotics Uniformed Division (SNUD) Unit. Detectives observed a female leaving the residence in a Ford Expedition late in the morning. Members of the SNUD Unit executed a traffic stop of her vehicle. The female was identified as Kelly Kelker, the defendant's long-time girlfriend and mother of one of his children. She informed the officers that Mr. Douglas was inside the house sleeping on the couch. She also informed them there was a loaded handgun on top of the refrigerator. A short time later, members of Narcotics and SNUD Units entered the house at 724 Kenmore Boulevard with a key given to them by Ms. Kelker. Mr. Douglas was arrested without incident. A search of the residence was completed and the following contraband was found among other various items:

1. $745 in U.S. Currency in the Defendant's pocket
2. $17,000 in U.S. Currency in a drawer in the dining room
3. $7,200 in U.S. Currency in a bedroom
4. $6,450 in U.S. Currency in a coat pocket in a bedroom closet
5. 9 unit doses of Viagra prescription medication
6. 33.5 grams of marijuana in a kitchen drawer
7. 135.6 grams of marijuana on the kitchen counter
8. 2,420.6 grams of marijuana in six separate bags in the basement

9. 1 digital scale on the kitchen counter

10. 1 Para Ordinance .45 caliber P13 pistol fully loaded with an obliterated serial number[1]

The defendant was interviewed in an upstairs bedroom by Detective James Palmer. He admitted possessing the marijuana. According to the Detective, the Defendant stated that he received on average approximately ten pounds of marijuana twice a week. The Defendant then described three of his suppliers and how he conducted transactions involving the marijuana. According to detectives, the Defendant also admitted that the gun which was the subject of the Indictment belonged to him. During his trial testimony, however, Defendant denied making this statement.

**2. History and Characteristics of the Defendant**

The defendant was born in Cleveland, Ohio to Robert and Patricia Douglas on June 21, 1977. He has one sibling, his sister Kesha Douglas (age 28), who resides in Cleveland where she works as a nurse. When the defendant was five years old, his parents separated and divorced. Although he maintained contact with his father, the defendant resided with his mother and sister after the divorce. The defendant claims he "had a hard family life" but his mother did her best to raise her children. His mother was formerly employed as a school teacher, and she currently works as a social worker. The Defendant claims to have resided with his mother at the time of the offense in Cleveland, Ohio.

The Defendant has never been married, but he has two children from two different women.

---

1 This firearm was the subject of the instant offense.

His first child was born in 1996 and currently resides with her mother and her grandmother in Shaker Heights, Ohio.  The Defendant's second child was born in 1997 and resides with her mother Kelly Kelker, a co-defendant in the Summit County Court of Common Pleas (Case No. 08-01-0301) criminal matter involving this Defendant.  On May 14th, 2008, Ms. Kelker was granted two years of community control after entering a plea of guilty to Trafficking in Counterfeit Controlled Substances and Possession of Counterfeit Controlled Substances.   Mr. Douglas claims he has regular contact with both of his children, but primarily with his daughter that resides with Ms. Kelker due to his ongoing relationship with her.   Defendant reported that this daughter has sickle cell anemia, and he tries to be actively involved in managing her health.

The Defendant stated that his is in good overall physical condition other than some allergies and reports some anxiety and sleeplessness since his arrest.  The defendant also acknowledged his use of illegal drugs including marijuana and ecstasy and considers himself addicted to marijuana and alcohol.

   **a. Education Background**

The defendant was enrolled in private schools in Cleveland, Ohio for the better part of his formative years from kindergarten through high school.   In 1996, he was enrolled at the Ohio State University where he earned an academic scholarship.   He lost his scholarship in 1999, after he was convicted for Trafficking in Marijuana.   Soon after he completed his term of incarceration, in approximately 2001, the Defendant enrolled at Columbus State Community College where he completed four semesters of schooling.   The Defendant did not attend school in 2003, but in 2004, he was enrolled at Cleveland State University.  He pursued a degree in accounting.   However, the Defendant was not attending school at the time of the instant offense.

5

### b. Employment

The Defendant's employment history is sporadic at best and it would appear from his prior record and his testimony at trial that he has supported himself primarily through his illegal drug trafficking activities.

### c. Prior Record

The Defendant's prior criminal record is set forth at pages six and seven, ¶¶ 25 through 31 of the Report, as well as his recent drug related convictions arising out of the facts related to his conviction in the within matter.

The Defendant has misdemeanor convictions for Petty Theft, Drug Abuse, Driving Under the Influence of Alcohol as well as several other similar minor convictions.  Of greatest import are the Defendant's convictions for Trafficking in Marijuana and Possession of Marijuana in 1999, and his subsequent convictions for the same offenses in 2006 and 2008.

The Defendant's criminal history indicates that he has essentially supported himself as a drug trafficker.  Aside from his misdemeanor record, in August of 1999, he was convicted of Trafficking in Marijuana, and Possession of Marijuana.   In September of 2006, he was convicted of Trafficking in Marijuana and Possession of Marijuana.  In August of 2008, as a part of the events giving rise to this conviction, Defendant was again convicted of Trafficking in Marijuana and Possession of Marijuana.

### 3. The need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, and protect the public

As noted above, the Defendant has three drug trafficking offenses all related to the sale of marijuana.  In his testimony at trial, the Defendant acknowledged working with Cleveland-area

Jamaican drug dealers during his course of conduct. Furthermore, the Defendant's drug dealing has been substantial. At the time of his trafficking conviction in 2006, the Defendant was in possession of $5,705.00 despite the fact he was unemployed and claimed to be a full-time student. Likewise, as set forth above, during the Defendant's apprehension for this offense he was in possession of over $30,000, a substantial amount of drugs, and a loaded firearm.

The Court also notes that the Defendant has received what can only be characterized as light sentences for his conduct. For his 1999 convictions, the Defendant received a sentence of 2 years in custody. However, he was permitted to enter a Boot Camp program and was released after serving only approximately 5 months. For his 2006 convictions, the Defendant received only probation, which he was serving at the time he once again violated the law resulting in his 2008 drug convictions and the within gun possession charge.

Based upon the above, it is clear the Defendant deserves a lengthy sentence as just punishment, to deter him from further criminal activity, and to protect the public from his ongoing criminal activity. None of the prior sanctions imposed have deterred the Defendant from his criminal conduct. In fact, his 2006 sentence of probation appears to have encouraged him to expand his activities, which now of course include the possession of a firearm. The Court need not expand upon the dangers posed by armed drug dealers in our community. Hopefully the Court's sentence will remind the Defendant of the seriousness of his conduct and motivate him to cease his drug trafficking activities upon his return to society.

**4. Defendant's request for a downward variance**

Defendant's Counsel has argued for a downward variance based upon the fact that the Defendant's ten year old daughter suffers from sickle cell anemia and due to the health of other family members, including his father and mother. Additionally, in support of a downward variance, the Defendant identified his efforts in attempting to attain his college degree. Counsel has argued for a downward variance to offense level 24, Criminal History Category III, resulting in a range of 63–78 months incarceration. The Government has opposed the Defendant's request and has argued that the statutory maximum of 120 months is already well below the applicable advisory guideline range of 151-188 months.

It is difficult for the Court to justify a downward variance in this case. The defendant is an admitted drug trafficker, dealt with criminal gangs, and has now possessed a firearm in connection with his drug activity. For that matter, he placed a loaded weapon, illegal drugs, and tens of thousands of dollars of the proceeds of his drug activity in the home in which his ill ten year old daughter resides. Despite that, the Defendant asks the court for leniency due to his child's serious ailment.

Having considered the statement of the Defendant's mother as well as the Defendant, the Court is of the view that a sentence of 120 months years is greater than necessary, despite the above-described facts. The Court pauses to note that it has also considered the numerous letters submitted on Defendant's behalf, including the letter from his ill daughter. Accordingly, the Court finds that a sentence at the highest end of offense level 24, Category III, (78 months) is sufficient but not greater than necessary under the facts of this case. That time frame should enable the Defendant to obtain treatment for his drug addiction and should provide for his release

before his daughter's majority so that perhaps he can become a positive influence in her life.

Further, the Court notes that Defendant's daughter's illness is quite severe. According to counsel, "[s]he receives almost monthly hospitilizations in connection with pain management." Ms. Kelker indicated with respect to her daughter's illness that "2008 has been the worst year ever… And this is September and she probably has been hospitalized, like, about six or seven times." In addition to this serious ailment, Defendant's mother suffers from diabetes and his father suffers from cirrhosis of the liver. While these latter two illnesses standing along may not give rise to extraordinary circumstances, the fact that both his parents have significant illnesses, when coupled with the severe illness of his daughter, compels the Court to find that a downward variance is appropriate.

**IV.  Kinds of Sentences Available**

The final calculated advisory guideline range of imprisonment is 151 to 188 months. However, as noted above, the maximum statutory penalty is 10 years imprisonment, a $250,000 fine, and 3 years of supervised release.

**V. Sentencing Disparities**

There are no known sentencing disparities between the defendant and other defendants with similar records and conduct.

**VI.  Conclusion**

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Rashidd Douglas is hereby committed to the Bureau of Prisons for a term of 78 months, and a term of supervised release of three years subject to the conditions set forth on the record.

The Court declines to impose a fine on Defendant, but he must pay to the United States a special assessment of $100, which shall be due immediately.

IT IS SO ORDERED.

September 15, 2008          /s/John R. Adams
Date          JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE